# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| EDWARD HARVEY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-00401-SGC |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, Commissioner, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Edward Harvey, Jr. ("Harvey"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1).[2] Harvey timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review. For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I.     FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Harvey was forty-seven years old at the time of his alleged disability onset

---

[1] The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). (Doc. 13).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner, and appear in the following format: (Tr. at __).

and fifty years old at the time of the unfavorable decision issued by the Administrative Law Judge ("ALJ"). (Tr. at 38, 39). Harvey speaks English and completed the eleventh grade. (Tr. at 38, 308). Harvey has previously worked as a cook helper, laborer in stores, general laborer and cleaner at a hospital, food service worker at a hospital, and worker at a chicken processing plant. (Tr. at 38). He filed the instant application on August 26, 2016, alleging a disability onset date of May 15, 2016, due to carpal tunnel, kidney issues, and surgery on his feet. (Tr. at 27, 68, 190, 307). During the ALJ hearing, Harvey testified he was unable to work due to carpal tunnel and back pain following surgery to remove a cyst. (Tr. at 51-52).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled, and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir.

1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the Listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Harvey met the insured status requirements of the Social Security Act through December 31, 2020.

(Tr. at 29). The ALJ then determined Harvey had not engaged in SGA from his alleged onset date of May 15, 2016. (*Id*.). The ALJ noted Harvey worked and had earnings after his alleged onset date but those earnings did not meet the agency-mandated threshold for substantial gainful activity. (*Id*.).

The ALJ determined Harvey has the following severe impairments: cervical degenerative joint disease, osteoarthritis, major depressive disorder, post-traumatic stress disorder ("PTSD"), and mild intellectual disorder based on the requirements set forth in the regulations (20 C.F.R. §§ 404.1520(c), 416.920(c)). (Tr. at 30). However, the ALJ found Harvey does not have an impairment or combination of impairments that meet or medically equal a listed impairment. (Tr. at 32). The ALJ found the record did not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to equal the criteria of any listed impairment and no acceptable medical source concluded Harvey's impairments medically equal a listed impairment. (*Id*.). Harvey's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 36). The ALJ determined Harvey has the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently stoop, kneel, crouch, crawl or climb. He should avoid concentrated exposure to extreme cold, humidity and any exposure to hazards. He can understand, remember and apply short, simple instructions and can attend to those for two-hour periods. He can tolerate occasional interaction

with co-workers and supervisors. Changes in the work environment should be gradual and occur no more than occasionally.

(Tr. at 35).

The ALJ found Harvey "unable to perform his past work" and considered him a "younger individual" on the alleged disability onset date but changed his age category to "an individual closely approaching advanced age" when he turned fifty. (Tr. at 38). The ALJ determined the "[t]ransferability of job skills [was] not an issue because the claimant [did] not have past relevant work (20 CFR 404.1568 and 416.968)." (*Id*.). At the hearing, a Vocational Expert ("VE") testified that considering Harvey's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy he can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a). (*Id*.). The ALJ concluded his findings by stating Harvey has not been under a disability, as defined in the Social Security Act, from May 15, 2016, the alleged onset date, through the date of his decision, December 12, 2018. (Tr. at 39). The Appeals Council granted Harvey's request for review and issued a partially favorable opinion, finding Harvey became disabled on June 2, 2018, under Section 1614(a)(3)(A) of the Social Security Act, and that he is entitled to disability and insurance benefits under Sections 216(i) and 223, respectively. (Tr. at 1-3). Harvey timely filed the instant appeal. (Doc. 14).

## II.   STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a

narrow one. The scope of its review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

On appeal, Harvey contends the ALJ's decision should be reversed and remanded for reasons that fall into two categories: (1) the ALJ's finding he is not disabled under Listing 12.05 was not supported by substantial evidence; and (2) the ALJ failed to properly evaluate the opinion of consultative psychologist Dr. June Nichols.

### A.     Disability Under Listing 12.05

A claimant is conclusively presumed to be disabled at step three of the sequential evaluation, discussed *supra*, if he meets or medically equals the level of severity of a listed impairment, or Listing. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The Listings describe "impairments that [the agency] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his age, education, or work experience." 20 C.F.R. § 416.925(a); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). To meet a

Listing, a claimant must have an impairment included in the Listings, as well as medical reports documenting that the condition meets the specific criteria of the Listing and the durational requirement. 20 C.F.R. §§ 404.925(a)-(d), 416.925(a)-(d); *Wilson*, 284 F.3d at 1224. The impairment(s) "must meet *all* of the specified medical criteria"; "an impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant bears the burden of demonstrating that he meets a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). Here, Harvey failed to meet his burden, as he failed to show he met all of the criteria of Listing 12.05.

The introductory material to the mental disorders listing clarifies Listing 12.05, stating:

> Listing 12.05 has two paragraphs, designated A and B, that apply to only intellectual disorder. Each paragraph requires that you have significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and evidence that demonstrates or supports (is consistent with) the conclusion that your disorder began prior to age 22.

Listings § 12.00A(3). Listing 12.05 provides:

> *Intellectual Disorder* (see 12.00B4), satisfied by A or B:
>
>   A. Satisfied by 1, 2, and 3 (see 12.00H):
>
>     1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

   OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or

   b. Interact with others (see 12.00E2); or

   c. Concentrate, persist, or maintain pace (see 12.00E3); or

   d. Adapt or manage oneself (see 12.00E4); and

> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*Id.* at § 12.05.

Harvey argues he meets the criteria for "presumptive disability" under listing 12.05 because he presented a valid, full-scale IQ score of 53, as well as evidence of a additional impairments that significantly affected his ability to work. (Doc. 14 at 24).³ Harvey correctly notes an IQ score under 70 creates a rebuttable presumption that he satisfies the diagnostic criteria for intellectual disability. *See Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001). However, it is well established that such a presumption does not arise where the qualifying IQ score is inconsistent with other record evidence concerning a claimant's activities and behavior. *Id.* at 1269; *see also Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986) ("[T]he ALJ was not required to find that [the claimant] had an intellectual disability based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior.").

---

³ A significant portion of Harvey's argument is devoted to analysis of a previous version of the regulations, including prior Listing 12.05(C). (Doc. 14 at 25-26). Under the old version of the rules, a claimant satisfied Listing 12.05(C) by showing a full-scale IQ of 60-70 and another physical or mental impairment imposing significant work-related limitations. *See Williams v. Saul*, No. 19-412, 2020 WL 6704575 at *5-*7 (S.D. Ala. Nov. 13, 2020). Those rules were revised, effective January 17, 2017, and the new rules applied to claims pending as of that date, including Harvey's. Soc. Sec. Admin., *Revised Medical Criteria for Evaluating Mental Disorders*, 81 F.R. 66138–01, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017). Accordingly, any argument regarding the application of Listing 12.05(C) is irrelevant.

Here, the ALJ acknowledged Harvey's IQ score of 53; however, he determined Harvey failed to show significant deficits in adaptive functioning, as required by Listing 12.05. (Tr. at 35). Adaptive functioning "refers to how you learn and use conceptual, social, and practical skills in dealing with common life demands" as well as "your typical functioning at home and in the community, alone, or among others." Listings § 12.00H(3)(A). A portion of listing 12.05(A)(2) requires evidence of "significant deficits in adaptive function currently manifested by your dependence on others for personal needs (for example, toileting, eating, dressing, or bathing)." Harvey lives alone, makes himself sandwiches, and was doing his own laundry up until six months before the ALJ hearing. (Tr. at 58-59). Harvey uses the toilet by himself, cares for himself, showers by himself, and goes to Salvation Army Stores to shop. (Tr. at 316, 318, 441). He also worked as a cook and stocked shelves at Big Lots after his disability onset date. (Tr. at 56-58). Harvey told Dr. Nichols at the consultative examination on December 14, 2016, that he attended church. (Tr. at 435, 437). He provided a copy of his personal driver's license to Dr. Nichols and Dr. Celtin Robertson upon arrival for his examinations. (Tr. at 435, 440). Although Harvey stated he does not like to drive and does not drive, he has shown he is able to drive by proof of his driver's license. (*Id.*); *see Bouler v. Comm'r of Soc. Sec.*, 624 F. App'x 728, 729 (11th Cir. 2015) (evidence of the plaintiff's ability to shop, drive, and take care of [his] own personal needs

11

supported the conclusion that the plaintiff did not exhibit significant deficits in adaptive functioning). The ALJ cited substantial evidence showing Harvey did not have the significant deficits required to meet listing 12.05(A)(2).

Harvey makes no argument as to the ALJ's finding regarding Listing 12.05(B). As such, he has waived the argument that the ALJ's assessment of his functioning is not supported by substantial evidence. *See e.g., Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (holding claimant waived arguments by not expressly challenging ALJ's findings). Nonetheless, the ALJ cited substantial evidence regarding Harvey's failure to meet Listing 12.05(B). To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in four broad areas of functioning: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. (Tr. at 32). The ALJ found Harvey only had moderate limitations in all four of these areas. (Tr. at 33).

In understanding, remembering, or applying information, Harvey's memory was intact; he was able to repeat five digits forward and four digits backwards; and although he could not perform more complex arithmetic, he was able to perform addition and subtraction. (Tr. at 436). Treatment records from Quality of Life

Health Services consistently noted Harvey's memory to be normal. (Tr. at 677, 683, 689, 696).

In interacting with others, Harvey reported he had no problems getting along with family, friends, neighbors, or others and reported he gets along with authority figures. (Tr. at 320-21). Treatment records often described Harvey as cooperative. (Tr. at 479, 700, 708, 725). Dr. Robertson described Harvey as having no difficulty relating to others. (Tr. at 441).

Regarding concentrating, persisting, or maintaining pace, his speed of processing was poor when counting from twenty to one, but he was able to perform addition and subtraction. (Tr. at 436). Dr. Teresa Moran, who reviewed the entire record, noted Harvey had moderate limitations in concentrating, persisting, or maintaining pace and that he would be able to complete more complex tasks if they were broken down into smaller, simpler sections to be completed. (Tr. at 109).

Finally, as for adapting or managing oneself, Harvey reported he can shower, shave, use the bathroom, and feed himself. (Tr. at 316, 318, 441). At the consultative examination, Dr. Nichols described him as a neat and clean individual. (Tr. at 435). Dr. Robertson described Harvey as has having normal appearance and behavior. (Tr. at 441). Substantial evidence supports the ALJ's findings that Harvey was only moderately limited in functioning for the "paragraph B" criteria.

After the ALJ issued his unfavorable decision, Harvey requested review by the Appeals Council. On November 21, 2019, the Appeals Council notified Harvey it had granted his request for review and would consider a statement about the facts and the law in the case, as well as additional evidence if the additional evidence met the rules in the notice. (Tr. at 11). However, Harvey did not submit a statement or any additional evidence. The Appeals Council adopted the ALJ's findings at steps one, two, three, and four of the sequential evaluation but did not adopt the ALJ's findings at step five. The ALJ found Harvey not disabled under the framework of Medical-Vocational Rules 202.17 and 202.10 (Table 2, Appendix 2, Subpart P, Appendix 2). However, because Harvey is illiterate, the Appeals Counsel found the framework of Medical-Vocational Rules 202.16 and 202.09 applied. (Tr. 11). Applying these rules directed a finding of disability once Harvey turned fifty. (*Id.*).

The Appeals Council found from May 15, 2016, through June 1, 2018, there were jobs for a person of Harvey's age, education, work experience, and RFC; however, the Appeals Council found beginning June 2, 2018, there were no jobs he could perform. (Tr. at 12). Therefore, the Appeals Council found Harvey was disabled beginning June 2, 2018, but not before that date. (*Id.*). Harvey contends the Appeals Council erred by not finding him disabled beginning on May 15, 2016, the alleged onset date of disability. (Doc. 16 at 1-2). However, as discussed above, substantial evidence supports the ALJ's finding regarding his earlier alleged onset,

as well as the Appeals Council's conclusion that Harvey was not disabled prior to turning fifty.

### B. Weight Given to One-Time Consultative Examiner's Opinion

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you" and 3) a non-examining source, which is "a

15

physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ."  20 C.F.R. § 404.1502.

The opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a claimant. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Still, medical consultants or medical experts are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180.  Indeed, a medical expert's opinion may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances, such as when the medical expert has reviewed the complete case record. *See* SSR 96-6p, 1996 WL 374180.  In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Harvey's argument that the "ALJ wrongly rejected the opinions of the Commissioner's examining consultative psychologist" at the end of his brief is cursory at best.  (Doc. 14 at 29-30).  He presents no other argument aside from this

one, conclusory statement. As such, he has waived that argument. *See e.g. Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant waived issue because he did not elaborate on claim or provide citation to authority regarding claim).

Nonetheless, the ALJ's decision to give partial weight to Dr. Nichol's opinion is supported by substantial evidence. Dr. Nichols, a licensed psychologist at Gadsden Psychological Services, conducted a one-time comprehensive examination on December 14, 2016. (Tr. at 435). While Dr. Nichols stated Harvey's functioning would interfere with his ability to respond appropriately to supervision, co-coworkers, and work pressures, as well as interfere with his ability to remember, understand, and carry out work-related instructions, she did not articulate the severity of these limitations or give any specific work-related limitations. (Tr. at 37, 438). Additional medical records demonstrate essentially normal psychiatric examinations and prior work activity, which are contradictory to Dr. Nichols' assessment that Harvey's functioning would interfere with his ability to respond appropriately to different people in work situations. (Tr. at 37, 56-58, 379-96). Harvey's own reports that he gets along with authority figures, family, friends, neighbors, and others directly contradict Dr. Nichols' finding. (Tr. at 320-21). The ALJ also afforded partial weight to Dr. Nichols' opinion because she did not have the benefit of reviewing the entire record and, as a one-time examiner, her opinion

was not entitled to any deference. *See McSwain*, 814 F.3d at 619. The ALJ did not err in affording partial weight to Dr. Nichols' opinion.

## IV.   CONCLUSION

Upon review of the administrative record and considering all of Harvey's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed. A separate order will be entered.

**DONE** this 29th day of September, 2021.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE